**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
CHRISTOPHER W. DAVIS,                            )
                                                )
                        Plaintiff,               )
                                                )
            v.                                   )            Civil Action No. 03-2531  (RBW)
                                                )
MARK A. FILIP, Acting Attorney General,  )
                                                )
                        Defendant.               )
_____)

**MEMORANDUM OPINION**

Christopher W. Davis, the plaintiff in this civil lawsuit, seeks compensatory and punitive

damages as well as injunctive relief against the Attorney General of the United States in his

capacity as head of the United States Department of Justice (the "DOJ")[1] for alleged unlawful

discrimination against him on the basis of race and national origin pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2000).  Specifically, the plaintiff

alleges that he was not selected for a lateral transfer to one of the Assistant Legal Attache

("ALAT") positions in Rome, Italy, "because of his race and national origin," Complaint

("Compl.") ¶ 14.  Instead, Angelus Lagomarsino, a white applicant of Italian descent, was

awarded the position, allegedly "because of his race and national origin," id., even though the

plaintiff "was far more qualified than Mr. Lagomarsino."  Id. ¶ 13.

On December 13, 2007, the Court issued an order denying the defendant's motion for

summary judgment under Federal Rule of Civil Procedure 56 along with an accompanying

_____
[1]  The plaintiff's complaint names John D. Ashcroft, then the Attorney General, as the sole defendant in this case.
Pursuant to Federal Rule of Civil Procedure 25(d), the Court substituted the names of Attorney General Ashcroft's
successors, Alberto R. Gonzales and Michael B. Mukasey, as the defendants in this case.  Consistent with this
practice, the Court has substituted the name of Acting Attorney General Filip as the defendant in this case.

memorandum opinion.[2]  That same date, the Court entered a separate order directing the plaintiff

to show cause why the Court should not grant summary judgment to the defendant on the issue

of damages and dismiss <u>sua</u> <u>sponte</u> the plaintiff's complaint for lack of standing.  Currently

before the Court is the plaintiff's response to that order to show cause (the "Pl.'s Resp.") as well

as the defendant's motion for reconsideration of the Court's order denying his motion for

summary judgment.[3]  After carefully considering the plaintiff's response, the defendant's

motion, and all memoranda of law and exhibits relating to that motion,[4] the Court concludes that

it must discharge its order to show cause and deny the defendant's motion for reconsideration for

the reasons that follow.

## I. Background

Though familiar to the parties and the Court, the facts underlying this case have never

been presented to the public, and therefore are recited in full below.[5]  The plaintiff, "an adult

African-American citizen of the United States," Compl. ¶ 1, is "an employee of the Federal

Bureau of Investigation ([the] 'FBI' [or the 'Bureau'])," <u>id.</u>, who "began his career as an FBI

---

[2]  Because it referenced certain exhibits filed under seal, the Court did not publicly issue its memorandum opinion. Instead, the Clerk of the Court entered a notation on the Court's docket reflecting that the memorandum opinion had been issued under seal on December 21, 2007.  Copies of the memorandum opinion were separately transmitted to counsel for the parties.

[3]  In addition to the plaintiff's response to the Court's order to show cause and the defendant's motion for reconsideration, the defendant has filed a motion to re-open discovery and the plaintiff has filed both a motion <u>in limine</u> regarding the calling at trial of an expert witness proposed by the defendant and a motion for a hearing on its response to the Court's show cause order.  The latter motion is moot in light of this memorandum opinion and its accompanying order.  The other motions are not addressed in this memorandum opinion.

[4]  In addition to the Court's prior memorandum opinion (and all documents considered therein) and the defendant's motion, the Court considered the following documents in determining the merits of that motion: (1) Defendant's Memorandum in Opposition to Plaintiff's Response to the Order to Show Cause Why Dismissal Should Not Be Entered and in Support of Motion for Reconsideration of the Order Denying Summary Judgment (the "Def.'s Mem."), (2) Plaintiff's Opposition to Defendant's Motion for Reconsideration (the "Pl.'s Opp'n"), and Defendant's Reply Memorandum to Plaintiff's Opposition to Defendant's Motion for Reconsideration of the Order Denying Summary Judgment (the "Def.'s Reply").

[5]  Unless otherwise noted, all allegations from the plaintiff's complaint cited herein are admitted in the defendant's answer, and all statements from the defendant's statement of facts in support his motion for summary judgment (the "Def.'s Stmt.") cited herein are not disputed by the plaintiff.

agent in February 1991," Def.'s Stmt. ¶ 3.  The plaintiff's first assignment was in Los Angeles,

California, where he "worked in the bank robbery squad for twelve to fifteen months" followed

by reassignment to the "gang squad for three and a half years, focusing on African-American

gangs."  Id.  The plaintiff then served on the Joint Terrorism Task Force before being "selected

to be a supervisor at FBI headquarters in Washington, D.C. in the Weapons of Mass Destruction

Unit."  Id. ¶ 4.  Following that assignment, the plaintiff returned to Los Angeles to work as the

International Terrorism supervisor, "in which capacity he served only one week," id. ¶ 5, before

becoming a "domestic terror and hate crimes coordinator," id.

In February of 2001, "the FBI posted a vacancy announcement inviting applications for

the position of [an ALAT] located in its office in Rome, Italy."  Compl. ¶ 9.  The plaintiff timely

submitted his application for the position.  Id. ¶ 10.  His application was considered by the

Investigative Services Division's Legat Screening Panel (the "Screening Panel"), "a rating panel

comprised of nine high-level FBI officials," along with the application of Angelus Lagomarsino,

a "Caucasian applicant . . . who bore an Italian surname."  Id. ¶ 11.  The Screening Panel

considered a total of eighteen applicants, which was "narrowed . . . down [by the Screening

Panel] to four recommended applicants."  Id.  The plaintiff was rated highest among all of the

applicants for the job, and Lagomarsino was ranked as tied for third place among the four

recommended candidates.  Id.

The Screening Panel transmitted its recommendations to the Special Agent Mid-Level

Management Selection Board (the "SAMMS Board"), "a selection board staffed by high-level

management officials of the FBI."  Id. ¶ 12.  The SAMMS Board met on May 15, 2001, during

which its members "numerically ranked each candidate for the job on a zero to four point scale."

Id.  The plaintiff "earned the highest possible ranking from six of the seven SAMMS Board

members," id., and "was the number one recommended candidate by the SAMMS Board." Id. Lagomarsino's scores placed him fourth among the four candidates for the position. Id.

The SAMMS Board forwarded its recommendation to Louis J. Freeh, at that time the Director of the FBI, "[i]n or around May 2001." Id. ¶ 13. Director Freeh, who "viewed the Legat program as a priority because of the increasing nature of organized criminal enterprises and international terrorism," Def.'s Stmt. ¶ 19, "bypassed the recommendation" of the SAMMS Board and selected Lagomarsino over the plaintiff, Compl. ¶ 13. The plaintiff learned of this decision on June 7, 2001, when he "received an electronic mail message listing Angelus Lagomarsino for the ALAT Rome position." Def.'s Stmt. ¶ 6. At that point, the plaintiff "inquired of the [Screening Panel] and the [SAMMS Board] about the details of the selection process." Id.

Within thirty days of learning of Lagomarsino's selection, the plaintiff contacted a DOJ Equal Employment Opportunity Counselor and initiated the counseling process. Compl. ¶ 5. The counseling concluded in August of 2001. Id. ¶ 6. The plaintiff filed a formal Complaint of Discrimination within fifteen days of his final counseling interview. Id.

The very next month, in September of 2001, the plaintiff applied for the ALAT position in Ottawa, Canada. Def.'s Stmt. ¶ 7. He was selected for this position "in December 2001 or January 2002[,] and reported for duty at the end of March 2002[] after a period of training in the Washington, D.C. area." Id. Eventually, the DOJ's Complaint Adjudication Office issued its Final Decision finding no discrimination in the selection of Lagomarsino over the plaintiff for the Rome ALAT position. Compl. ¶ 7. The plaintiff learned of this decision by way of a letter dated October 23, 2003. Id. ¶ 7.

The plaintiff filed his complaint in this Court on December 12, 2003.  In his complaint, the plaintiff alleges that he "was rejected by the [d]efendant for the position [of a Rome ALAT] because of his race and national origin," and that "Angelus Lagomarsino was selected because of his race and national origin."  Id. ¶ 14.  The plaintiff further contends that he "suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress" as a result of this alleged discrimination.  Id. ¶ 15.  Consequently, the plaintiff seeks compensatory and "other" damages, id. at 4, costs, expenses, attorneys' fees, and pre- and post-judgment interest, and declaratory relief, id. at 5.  The plaintiff also requests that the Court "[i]nstate [him] into the position of ALAT Rome or a comparable position, with all attendant benefits, and award front pay until [the d]efendant instates [the p]laintiff into the position in question or a comparable position."  Id. at 4.

The defendant filed his answer on March 19, 2004.  After a protracted discovery process spanning more than a year, the defendant filed a motion for summary judgment on August 24, 2006.  In support of his motion, the defendant argued that he should be awarded summary judgment because (1) the plaintiff could not demonstrate that he was the victim of an adverse action, and therefore could not establish a prima facie case for discrimination, and (2) the plaintiff had not shown that the legitimate, non-discriminatory reasons given for Director Freeh's decision to choose Lagomarsino over the plaintiff were pretextual.[6]

The Court rejected both of these arguments in its December 13, 2007 memorandum opinion.  Noting that "the burden of establishing a prima facie case is not onerous," the Court found that "the evidence in the record . . . easily satisfie[d]" the requirement that the plaintiff suffer some adverse action as a result of the FBI's alleged discriminatory acts, Davis v.

---

[6]  In addition to challenging these arguments in his opposition, the plaintiff filed a motion to strike certain arguments made and evidence submitted by the defendant under Federal Rule of Civil Procedure 37.  The Court eventually granted that motion in an order entered on June 26, 2007.

Mukasey, Civil Action No. 03-2531 (RBW), slip op. at 11 (D.D.C. Dec. 13, 2007) (internal citation and quotation marks omitted), because "the record [was] clear that the plaintiff would have faced a drastic change in job responsibilities had he transferred from his field supervisor position in Los Angeles to the ALAT position in Rome," id. at 12, and "[a] transfer to the Rome ALAT post would also have affected the plaintiff's likely career path," id. at 13.  The Court also rejected the defendant's argument that the plaintiff had suffered no adverse action due to his subsequent appointment to the Ottawa ALAT position because that subsequent transfer, while perhaps "limit[ing] or even foreclos[ing] the recovery of damages by the plaintiff, . . . [did] not retroactively annul the fact that the plaintiff's overseas career prospects were harmed when his application for the Rome ALAT post was denied in the first place."  Id. at 15.

Further, the Court "agree[d] [with the plaintiff] that a reasonable jury could infer that Director Freeh's explanation as to why he chose Lagomarsino over the plaintiff [was] a pretext for discrimination."  Id. at 16.  The Court reached this conclusion because "[e]vidence in the record undercut[] the credibility of" Director Freeh's explanation that he selected Lagomarsino due to the "language disparity between the plaintiff and Lagomarsino," id., and because the Court found "some evidence of inconsistency in the amount of deference given by Director Freeh to the SAMMS Board rankings," id. at 17.  The Court therefore concluded that it had to deny the defendant's motion for summary judgment.  Id. at 18.

In reaching that decision, however, the Court recognized that "its analysis . . . [gave] rise to new concerns about the viability of the plaintiff's requests for relief."  Id.  Specifically, the Court found that the plaintiff's claim for punitive damages was legally barred, that his claim for injunctive relief had likely "been satisfied by the plaintiff's procurement of an ALAT position in Ottawa, Canada," and that the plaintiff "ha[d] not as yet provided any basis from which the

factfinder could award compensatory damages."  Id. at 19.[7]  Wary of "conducting a trial in a case where none of the relief requested by the plaintiff could possibly be awarded to him," id. at 19-20, the Court "direct[ed] the plaintiff to show cause why the Court should not grant summary judgment to the defendant on the issue of damages and dismiss the plaintiff's [c]omplaint for lack of standing," id. at 20.

The Court expected that, following a prompt response from the plaintiff to its order to show cause, it could quickly resolve the issue of damages and either grant summary judgment in the defendant's favor or discharge its order to show cause and set a date for a pre-trial conference.  This did not occur.  Instead, the parties jointly moved to stay this case so that they could pursue a possible settlement using a private mediator, and the Court granted that request on January 30, 2008.  There was no further substantive activity in this case until May 26, 2008, when the Court reinstated its prior order to show cause based upon the parties' inability to reach a settlement.

The plaintiff finally filed his response to the Court's order to show cause on June 25, 2008.  In his response, the plaintiff asserts that he suffered "non-pecuniary harm"[8] in the form of "emotional pain and mental anguish" as a result of the discriminatory acts allegedly committed against him.  Pl.'s Resp. at 3.  He also "seek[s] to recover the $8,925 he paid in rent in Los Angeles from the time he would have received his posting in Rome until he later received a promotion to a different ALAT position."  Id.  Finally, the plaintiff restates his position that he

---

[7]  The Court also held that it would likely exercise its discretion to dismiss the plaintiff's request for declaratory relief under the doctrine of prudential mootness if the plaintiff could not prove that he was entitled to damages.  Davis, slip op. at 19 n.11.

[8]  It is unclear whether the plaintiff will seek an award for back pay as well.  At the outset of his response, the plaintiff states unequivocally that "[h]e does not seek an award of back pay," Pl.'s Resp. at 1, but later on he suggests that he is "entitled to pre-judgment interest on his back pay award," id. at 2, which, of course, he could only obtain if there was a back pay award against which interest could accrue.

"is entitled to reinstatement into the Rome ALAT position" notwithstanding the concerns expressed by the Court in its memorandum opinion.  <u>Id.</u> at 4.

The defendant filed both an opposition to the plaintiff's response and a motion for reconsideration of the Court's summary judgment decision along with one consolidated memorandum of law on July 25, 2008.  In that memorandum of law, the defendant does not contest the plaintiff's assertion that he suffered an injury in the form of "emotional pain and mental anguish."  Instead, he argues that the Court should reconsider its prior decision and grant summary judgment in his favor because "the difference between the Rome, Italy ALAT position and the Ottawa, Canada ALAT position was not materially adverse" and because "[the p]laintiff cannot recover during any period of time encompassed by his claims for 'fringe benefits' or incidental benefits related to housing and utilities and state taxes," which "are too speculative and intangible . . . to justify recognition as a form of legal harm."  Def.'s Mem. at 1.

The plaintiff dismisses the defendant's motion as "[doing] not[h]ing more than re-argu[ing] [his] original misguided point comparing Rome and Ottawa," Pl.'s Opp'n at 3, noting that "[the d]efendant does not and cannot explain why this Court was wrong to determine whether there was an adverse action based upon the circumstances at the time of the discriminatory promotion decision," <u>id.</u> at 2.  The plaintiff argues in reply that "[t]he Court's decision . . . [was] not as broad as it should [have been]," and that the Court "should have held that, to the extent [the p]laintiff seeks relief beyond and notwithstanding his selection for the ALAT position in Ottawa, his claim for relief [was] foreclosed because such a claim lacks materiality."  Def.'s Reply at 2-3.

## II. Legal Analysis

The Court's order to show cause directed the plaintiff to demonstrate why summary judgment should not be granted to the defendant under Federal Rule of Civil Procedure 56; thus, the Court's first task is to satisfy itself that the plaintiff has shown a genuine dispute of material fact with respect to the question of standing.  See Fed. R. Civ. P. 56 (permitting summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (internal quotation and citation omitted).  "That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation."  Davis v. FEC, ___ U.S. ___, ___, 128 S. Ct. 2759, 2768 (2008) (internal quotation and citation omitted).  "The requisite elements of Article III standing are well established: [a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Hein v. Freedom from Religion Found., Inc., ___ U.S. ___, ___, 127 S. Ct. 2553, 2562 (2007) (internal quotation and citation omitted).

Without question, the plaintiff has demonstrated that there is at least a genuine dispute of material fact as to whether he suffered a "personal injury fairly traceable to the defendant's allegedly unlawful conduct" that would "be redressed by the requested relief."  As detailed in his extensive response to an interrogatory posed by the defendant, the plaintiff has "suffered emotionally since discovering that [he] was not selected for the Rome ALAT position," which

left him "deeply disillusioned, depressed, angry, shocked, and disheartened."  Pl.'s Resp., Ex. 1

(Plaintiff's Answers to Defendant's First Set of Interrogatories to Plaintiff) at 25.  He claims to

"have suffered depression both immediately and periodically since June [of] 2001," to have

"experience[d] disrupted sleep patterns as a result of" Director Freeh's decision, and to "have

experienced deep anger and frustration that has led [him] to question [his] ability to succeed

professionally."  Id. at 26.  These claims, if true, would give rise to compensatory damages under

Title VII.  See 42 U.S.C. § 1981a(b)(3) (contemplating compensatory damages for "emotional

pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary

losses"); see also Peyton v. DiMario, 287 F.3d 1121, 1126 (D.C. Cir. 2002) (holding that Title

VII plaintiff had been "injured" where "she became depressed, angry, and suffered a loss of self-

esteem" as a result of discriminatory acts against her).  Consequently, the Court's order to show

cause must be discharged based on the evidence of the plaintiff's purported mental anguish

alone.

　　　　The defendant's motion for reconsideration, on the other hand, is without merit.  The

motion is governed by Federal Rule of Civil Procedure 54(b) due to the interlocutory nature of

the Court's order denying the defendant's motion for summary judgment.  See Judicial Watch v.

Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) ("A ruling that denies a dispositive

motion is an interlocutory judgment.").  "The standard of review for interlocutory decisions

differs from the standards applied to final judgments under Federal Rules of Civil Procedure

59(e) and 60(b)."  Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008).  "In particular,

reconsideration of an interlocutory decision is available under the standard 'as justice requires.'"

Judicial Watch, 466 F. Supp. 2d at 123; accord Lemmons v. Georgetown Univ. Hosp., 241

F.R.D. 15, 21 (D.D.C. 2007) (Walton, J.).

"'As justice requires' indicates concrete considerations" by the court, <u>Williams</u>, 569 F.

Supp. 2d at 108, such as "whether the court patently misunderstood the parties, made a decision

beyond the adversarial issues presented, made an error in failing to consider controlling decisions

or data, or whether a controlling or significant change in the law has occurred," <u>In Defense of

Animals v. Nat'l Inst. of Health</u>, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal citation and

quotation marks omitted).  "Furthermore, the party moving to reconsider carries the burden of

proving that some harm would accompany a denial of the motion to reconsider."  <u>Id.</u> at 76.

"These considerations leave a great deal of room for the court's discretion,"  amounting to a

determination "whether reconsideration is necessary under the relevant circumstances."  <u>Judicial

Watch</u>, 466 F. Supp. 2d at 123 (internal citation and quotation marks omitted).

"[E]ven if justice does not 'require' reconsideration of an interlocutory ruling, a decision

to reconsider is nonetheless within the [district] court's discretion."  <u>In Defense of Animals</u>, 543

F. Supp. 2d at 76.  But "the efficient administration of justice requires that a court at the very

least have good reason to reconsider an issue which has been litigated by the parties," <u>id.</u>, and

"the court's discretion under [Rule] 54(b) is limited by the law of the case doctrine," <u>Williams</u>,

569 F. Supp. 2d at 109.  Thus, "where litigants have once battled for the court's decision, they

should neither be required, nor[,] without good reason[, be] permitted[] to battle for it again."

<u>Singh v. George Washington Univ.</u>, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal citations

and quotation marks omitted).

Here, the defendant has not demonstrated either that justice requires or that good reason

exists to award the relief that he requests.  As clarified in his reply memorandum, the defendant

does not "request[] reconsideration of the specific analysis performed by the Court," but rather

"request[s] reconsideration of the breadth of the decision" insofar as "[the p]laintiff seeks relief

beyond . . . his selection for the ALAT position in Ottawa." Def.'s Reply at 2.  This request might have some force if the plaintiff actually sought relief for discrimination allegedly perpetrated against him after his promotion to the ALAT position in Ottawa, but that is not the situation before the Court.  Instead, the plaintiff seeks redress for the discrimination allegedly perpetrated against him prior to his selection for the Ottawa position in late 2001 or early 2002. Indeed, the damages and injunctive relief that the plaintiff seeks all flow from that earlier alleged act of discrimination; accordingly, the plaintiff concedes that his damages for lost "fringe benefits" should be restricted to the period of time between his non-selection for the Rome ALAT position and his appointment to the Ottawa ALAT position.  Pl.'s Resp. at 3.

It remains an open question whether the injunctive relief requested by the plaintiff— placement in the Rome ALAT position—is "appropriate" within the meaning of 42 U.S.C. § 2000e-5(g).  Similarly, the amount of damages, if any, to be awarded to the plaintiff as compensation for any pecuniary loss that he suffered due to his non-selection for the Rome ALAT position necessarily remains unsettled.  But those questions are, in the defendant's own words, "premature."  Def.'s Mem. at 2.  Until the plaintiff has prevailed on the question of liability, there is no need, and therefore no good reason, for the Court to consider these issues. The Court therefore declines to do so.

### III. Conclusion

The only concern raised by the Court in its order to show cause was whether the plaintiff had standing to bring his suit, lest the Court be forced to "conduct[] a trial in a case where none of the relief requested by the plaintiff could possibly be awarded to him."  Davis, slip op. at 19- 20.  The plaintiff has satisfied the Court's concerns on that score.  To the extent that the defendant seeks to expand the Court's inquiry into the appropriateness of the injunctive relief

requested by the plaintiff or the scope of his damages before the defendant's liability has even

been established, the defendant's request is misguided and must be denied, at least at this stage

of the proceedings.  The Court will therefore discharge its prior order to show cause, deny the

defendant's motion for reconsideration, and set a hearing on the parties' discovery disputes so

that this case can be brought to trial and an ultimate resolution as expeditiously as possible.

**SO ORDERED** this 22nd day of January, 2009.[9]

REGGIE B. WALTON
United States District Judge

---

[9]  An order will be entered contemporaneously with this memorandum opinion (1) discharging the Court's order to show cause, (2) denying the defendant's motion for reconsideration, (3) denying as moot the plaintiff's motion for a hearing, and (4) setting a hearing on the defendant's motion to reopen discovery and the plaintiff's motion in limine to exclude Dr. Maria Brau as a trial witness for the defendant.